UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAGIO KASONGO BANZA,<br><br>Petitioner(s),<br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondent(s). | CASE NO. C26-3828-KKE<br><br>ORDER GRANTING IN PART HABEAS PETITION |

Petitioner entered the United States in 2022 seeking asylum and has lived in the United States under supervision by Immigration and Customs Enforcement ("ICE") since that time. Dkt. No. 1 ¶ 2. On October 2, 2026, at a required check-in appointment, ICE arrested and detained Petitioner without prior notice or opportunity to be heard. Petitioner remains in custody at the Northwest ICE Processing Center ("NWIPC"). Because the Court finds that Petitioner's re-detention violated due process, the Court will grant in part his habeas petition and order the Government to immediately release Petitioner.

## I. BACKGROUND

Petitioner Pagio Kasongo Banza, a native and citizen of Angola, entered the United States on May 28, 2022, and was encountered and detained by United States Border Patrol ("BP"). Dkt. No. 5 ¶¶ 3–4; Dkt. No. 1-2 ¶ 11. While Petitioner was in BP custody, he expressed a fear of persecution and torture in Angola. Dkt. No. 1-2 ¶ 11. BP issued a Form I-200 "Warrant for the

Arrest of Alien" for Petitioner, and Petitioner was transferred to the custody of ICE, served with a with a Notice to Appear ("NTA") charging him with removability, and placed into immigration removal proceedings before an immigration judge ("IJ") on May 30, 2022. Dkt. No. 5 ¶ 5. On May 31, 2022, Petitioner was released on a Form I-220A "Order of Release on Recognizance" ("OREC") that required electronic GPS monitoring, among other conditions of release. *Id.* ¶ 6; Dkt. No. 1-2 ¶ 12. None of these documents—the Form I-200, the NTA, nor the OREC—appear in the record. However, the Government concedes that some of these "immigration documents cite Section 1226(a) as the arrest/detention authority." Dkt. No. 4 at 3.

As instructed upon his release, Petitioner reported to the ICE field office in Seattle, Washington, on June 28, 2022. Dkt. No. 5 ¶¶ 6–7; Dkt. No. 1-2 ¶¶ 12–13. Petitioner was required to continue on electronic monitoring. Dkt. No. 5 ¶¶ 7–13; Dkt. No. 1-2 ¶¶ 13–14. The parties dispute the exact details of the electronic monitoring imposed on Petitioner following his June 28, 2022, report to ICE. *See id.* According to the sworn declaration of Audrey Gilliam, one of Petitioner's attorneys, after June 28, 2022, ICE "placed two main requirements on [Petitioner]: wearing a GPS ankle monitor, and uploading a photograph to an application on his phone once per week." Dkt. No. 1-2 at 13. And, according to Ms. Gilliam, "[Petitioner] wore the GPS ankle monitor until [ICE] removed it in approximately December 2024." *Id.* at 14. According to the declaration of United States Department of Homeland Security ("DHS") Deportation Officer Kurtis Reed, ICE "transitioned Petitioner from GPS monitoring to SmartLink, a smartphone application through which [Petitioner could] complete check-ins," on June 28, 2022. Dkt. No. 5 ¶ 7. However, according to Officer Reed's declaration, "[o]n August 29, 2023, [ICE] returned Petitioner to GPS monitoring because Petitioner had not complied with his … reporting requirements." *Id.* ¶ 9. The parties agree that on December 6, 2024, ICE discontinued Petitioner's

GPS monitoring and required Petitioner only to check in via the smartphone application. Dkt. No. 5 ¶ 13; Dkt. No. 1-2 ¶ 14.

Throughout this time, Petitioner attended the hearings in his immigration proceedings, initially appearing *pro se* and later through counsel. Dkt. No. 1-2 ¶¶ 16, 21; *see* Dkt. No. 5 ¶ 8. On April 13, 2023, Petitioner timely filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, which remains pending before the immigration court. Dkt. No. 1-2 ¶ 16; *see* Dkt. No. 5 ¶ 8. Petitioner applied for and was granted work authorization. *Id.* ¶ 17. On February 19, 2026, Petitioner's wife filed a family petition for Petitioner with United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 22. Petitioner's wife is a lawful permanent resident with a naturalization application that has been pending with USCIS since May 2025, and Petitioner has two children and one stepchild who are United States citizens. *Id.* ¶¶ 5, 22. Also in February 2026, Petitioner's counsel filed with the immigration court a motion for a competency hearing and safeguards asserting Petitioner has serious neurocognitive and mental health diagnoses that make him not competent to participate in removal proceedings. *Id.* ¶ 23; *see id.* ¶¶ 3, 7–10.

On October 2, 2026, when Petitioner reported for an ICE appointment as directed, ICE arrested Petitioner and took him into custody at the NWIPC in Tacoma, Washington. Dkt. No. 1-2 ¶¶ 53–54; Dkt. No. 1-3; *see* Dkt. No. 5 ¶ 16. According to the declaration of Officer Reed, on October 2, 2026, ICE purported to "approve[] a custody redetermination based on [Petitioner's] persistent noncompliance with … reporting requirements," "issued and executed Form I-200, Warrant for the Arrest of Alien, and took Petitioner into custody." Dkt. No. 5 ¶ 16.[1] No

[1] In her sworn declaration attached to the habeas petition, Elizabeth Eisenberg, one of Petitioner's attorneys who was with Petitioner when he was arrested by ICE on October 2, 2026, states: "I was not allowed to inspect the document the [ICE] officers claimed was a warrant, the alleged list of ISAP violation, or any other evidence[,]" and "[a]n officer … claimed he would email me copies of the documents later and asked me to write down my email address, but no documents were ever emailed to me." Dkt. No. 1-3 ¶¶ 10–11.

documentation of this custody redetermination or the Form I-200 appear in the record. According to Officer Reed, Petitioner's "persistent noncompliance" with his reporting requirements consisted of "approximately 24 … violations, including location services disabled, home visit failures, and missed biometric check-ins." *Id.* As evidence of these violations, the Government submits a document attached to Officer Reed's declaration that lists "Alert Date" and "Alert Type"; the dates listed range from September 7, 2022, to March 23, 2026, and the "[t]ypes" listed are "Missed Biometric Check-In," "Location Services Disabled," "Tracker Missed Callback," "Tracker Low Battery," "Virtual Home Visit Failed," "Late Biometric Check-In" or "In Person Home Visit Failed." Dkt. No. 5 at 5. Over half of the purported violations listed bear a date before December 2024, when the Government elected to remove electronic monitoring as a condition. *See id.*[2]

Petitioner's immigration proceedings remain pending, and Petitioner is scheduled for a master calendar hearing before an IJ on November 2, 2026. Dkt. No. 5 ¶ 17. Petitioner remains in custody at the NWIPC. *Id.* ¶ 19. On October 8, 2026, Petitioner filed a petition for writ of habeas corpus requesting immediate release and other relief. Dkt. No. 1.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution,

---

[2] The Court doubts that this document listing Petitioner's purported violations constitutes admissible evidence. As Petitioner observes, Officer Reed's declaration likely constitutes inadmissible hearsay because it "appears to be based on statements from other individuals or records contained in a DHS database," and Officer Reed "does not have 'personal knowledge of the matter' to which he is attesting." Dkt. No. 6 at 4 (quoting Dkt. No. 5 ¶ 2; citing Fed. R. Evid. 801, 802, 602). Further, the list of violations attached to Officer Reed's declaration, which Officer Reed purports to authenticate, "does not bear [Officer] Reed's name or, for that matter, the name of any other [ICE] officer that could attest to the incidents," and no specific ICE system is identified in the document or the declaration. *Id.*; *see* Dkt. No. 5. Accordingly, the document listing the purported violations appears to be both hearsay and not authenticated.

which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to his circumstances, after determining the governing detention authority.

**A. Petitioner is not subject to mandatory detention.**

To determine whether Petitioner's re-detention complies with due process, the Court must first determine the statutory authority governing Petitioner's re-detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can

affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

The Government contends that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), though concedes that the Ninth Circuit and this Court have repeatedly held otherwise. Dkt. No. 4 at 4–6. As the Government anticipates, the Court reiterates its agreement with other courts that reject an expansion of the scope of mandatory detention under Section 1225(b)(2) to include Petitioner. Petitioner's status as a person previously released with conditions, and who has been living in this country for years, counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g., Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The

overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a).[3]

**B. Petitioner's re-detention does not comport with due process.**

In this case, the Court finds that all three *Mathews* factors favor Petitioner.

First, Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner's arrest, after he has lived in the community for years, undoubtedly deprived him of an established interest in his liberty. "When [Petitioner] was released from his initial detention …, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)).

Second, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of adequate notice of the justification for detention. Even if the electronic monitoring violations could properly justify revoking Petitioner's OREC, the Government has not shown that Petitioner received notice of them, or why such notice is not required. *See E.A. T.-B.*

[3] Moreover, as the Government concedes, the Government *told* Petitioner he was subject to Section 1226. Dkt. No. 4 at 3. Where the Government treats a noncitizen as subject to discretionary detention under Section 1226, the noncitizen is likely detained subject to that authority. *See Cuervo Marin v. ICE Field Off. Dir.*, No. C26-1071-KKE, 2026 WL 1123516, at *3 (W.D. Wash. Apr. 24, 2026); *Walter Ortiz v. Mullin*, No. 26-CV-03495-DGE, 2026 WL 3071550, at *3 (W.D. Wash. Oct. 14, 2026). And release under an OREC is synonymous with release pursuant to Section 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

*v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). That Petitioner disputes the violations (*see* Dkt. No. 1 at 2–3, 18–27; Dkt. No. 6 at 4–7), combined with the Government's failure to adduce any of the relevant documents from Petitioner's immigration file or any admissible evidence to substantiate its allegations of Petitioner's violations, increases the Court's concern that pre-deprivation notice is necessary. Thus, the second *Mathews* factor weighs in Petitioner's favor.

And third, the Court finds that the Government's interest in re-detaining noncitizens previously released without process is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing before OREC revocation are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Particularly because the significant majority of Petitioner's alleged violations appear to have occurred months or years before Petitioner's OREC was revoked, and, moreover, the Government previously decided that GPS monitoring was unnecessary despite these alleged violations, the Government has not shown that its interest in enforcing immigration laws must be satisfied immediately. *See* Dkt. No. 5 at 2–5. The third *Mathews* factor thus weighs in Petitioner's favor.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process.

## III. REMEDY

Having determined that Petitioner's arrest without a hearing violated his constitutional right to due process, the Court finds Petitioner's detention to be unlawful. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receives notice and an opportunity to be heard before he may be re-detained for alleged OREC violations. *See, e.g., Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 (N.D. Cal. 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future hearing for this purpose, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

In addition to immediate release, Petitioner requests the Court enjoin the Government from imposing GPS monitoring as a condition of his immediate release and prevent the Government from imposing such a condition without notice and opportunity to be heard during the pendency of Petitioner's removal proceedings. Dkt. No. 1 at 30. The Government argues generally that due process does not require such an injunction. Dkt. No. 4 at 6–7.

The Court notes that the Government maintains GPS monitoring has not been a condition of Petitioner's release on recognizance since December 6, 2024. *See* Dkt. No. 4 at 2 (stating Officer Reed's declaration "set[s] forth" Petitioner's "immigration history, participation in the

ATD program, and contacts with ICE"); Dkt. No. 5. ¶¶ 13–19 (Officer Reed declaration stating ICE "transitioned Petitioner from GPS monitoring to SmartLINK" on "December 6, 2024" and making no reference to returning him to GPS monitoring thereafter). Petitioner agrees that ICE removed him from GPS monitoring in December 2024 (Dkt. No. 1 ¶ 54), but alleges that ICE "placed a GPS ankle monitor on" Petitioner without notice or explanation during a May 13, 2026 check-in appointment, required him to continue wearing it in the subsequent months, and rebuffed repeated requests for explanation or to remove it. Dkt. No. 1 ¶¶ 59–78; *see* Dkt. No. 6 at 8–9. Neither Petitioner's OREC nor any other direct documentation of Petitioner's electronic monitoring appears in the record.

Citing cases from this district, Petitioner argues that he is entitled to notice and an opportunity to be heard before any GPS monitoring condition is re-imposed. *See, e.g.*, *Diallo v. Scott,* No. 2:26-CV-00975-GJL, 2026 WL 1843102, at *2–3, 10 (W.D. Wash. June 26, 2026) (considering and granting immigration habeas petition challenging GPS monitoring condition of release). The government does not cite any authority to the contrary. Nor does the government respond to Petitioner's argument that no process exists to challenge release conditions once they are imposed, or the allegations that Petitioner's disabilities cause unique medical and mental health hardships that are exacerbated by wearing the GPS monitor. *See* Dkt. No. 1 ¶ 27, 30. Given the lack of substantive opposition, and the absence of crucial documentation in the record, the Court will grant Petitioner's request to be released without GPS monitoring. Given the state of the record and the relief granted in this order, the Court finds further injunctive relief unnecessary at this time.

## IV. CONCLUSION

For these reasons, the Court GRANTS IN PART the habeas petition. Dkt. No. 1. The Court further ORDERS:

(1) No later than October 31, 2026, the Government shall release Petitioner without GPS monitoring and, otherwise, on the same conditions of his prior OREC.

(2) The Government shall file a status report no later than November 2, 2026, confirming compliance with this order.

(3) Petitioner shall not be re-detained, absent urgent circumstances, without pre-deprivation notice and an opportunity to be heard in front of an Immigration Judge where the Government shall bear the burden of demonstrating the justification for detention by clear and convincing evidence.

(4) Petitioner may seek attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and any other basis justified under law. Any fee petition shall be filed within the deadlines set forth by the EAJA.

Dated this 30th day of October, 2026.

Kymberly K. Evanson
United States District Judge